CAMPBELL. In re. See Cases Nos. 2,349, 2,370, 5,305, and 5,306.

———

## Case No. 2,349.
### CAMPBELL'S CASE.

[1 Abb. U. S. 185;[1] 1 Am. Law T. Rep. Bankr. 30; 1 N. B. R. 165; Bankr. Reg. Supp. 36; 7 Am. Law Reg. (N. S.) 100; 6 Int. Rev. Rec. 174; 6 Phila. 445; 3 Pittsb. Rep. 96; 15 Pittsb. Leg. J. 13; 24 Leg. Int. 356.]

District Court, W. D. Pennsylvania. 1867.

INJUNCTION—PROCEEDINGS IN STATE COURTS—POWERS OF DISTRICT COURTS.

1. A district court has not power to enjoin the prosecution of an action in a state court.

[Cited in McKinsey v. Harding, Case No. 8,866. Applied in Re Burns. Id. 2,182. Disapproved in Re Mallory. Id. 8,991. Cited in Re Brinkman, Id. 1,884; Hudson v. Schwab, Id. 6,835.]

2. The bankrupt act of 1867 [14 Stat. 517] does not confer such power, even in aid of proceedings in bankruptcy; nor does it impair the rule prescribed by the act of March 3, 1793, forbidding injunctions to stay proceedings in courts of a state.

Motion to dissolve an injunction.

Painter, Golden & Foster, for motion.

Mr. Patterson, opposed.

McCANDLESS, District Judge. I feel the grave responsibility which attaches to the decision about to be announced. In construing a new and untried statute, and establishing the practice to be observed in its proper administration, there must necessarily be much diversity of opinion among both lawyers and judges. The interests involved are frequently so large and the principles so important, that inextricable confusion must result from an unsound interpretation of the legislation of congress. This bankrupt act [of 1867] is highly beneficial to both the debtor and the creditor. It was designed to relieve the one from oppressive liabilities, which render him unfit to contribute to the productive wealth of the country; and it affords the other an assurance that all the property of the debtor, except what from motives of humanity he is permitted to retain, shall be honestly devoted to the payment of his debts. With a fraudulent debtor it is wisely and justly stringent, compelling a full discovery and surrender of his assets, for the benefit of his creditors. under peril of imprisonment for contempt—[which in the courts of the United States is][2] a penalty not to be disregarded.

The present is a case upon creditors' petition to declare Hugh Campbell a bankrupt. Numerous acts of bankruptcy have been assigned, all of which are denied, and a trial by jury awarded. Many judgments of large amount, the validity of which is not questioned, have been entered in the court of common pleas of Armstrong county; and they are all prior in date to the period when the bankrupt law went into operation. Upon final process, a sale of real estate by the sheriff has been made, and twenty-nine thousand two hundred and ninety dollars realized and brought into court for distribution. Under these circumstances our extraordinary power of injunction was invoked to restrain not only the plaintiffs in these judgments, but the courts of the state and their executive officers from further proceeding, with the design to bring all the property of the bankrupt into this court, as a court of bankruptcy, for division among all his creditors. The injunction against the sheriff and the parties was granted, with leave, instanter, for a motion to dissolve, that we might ascertain whether, under the bankrupt law, we have the right to interfere with the courts of the state in the legitimate exercise of their functions.

After much reflection I am satisfied we have not, nor with the actors or parties litigating before them.

The first section of the act is wide in its scope, and would seem to bring all parties, estates, and interests connected with the bankrupt into a common forum or center. And to do so, it is contended that congress, by implication, conferred upon the district

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

[2] [From 1 N. B. R. 166.]

courts of the United States the authority to suspend all and every proceeding elsewhere, and to command obedience to their mandates, exclusive of all other jurisdictions. This, by virtue of the fifth clause of the eighth section of the first article of the constitution of the United States, granting the power "to establish uniform laws on the subject of bankruptcies throughout the United States," congress had the right to do,—but they have not done so.

Staring them in the face was the act of March 2, 1793, § 5 [1 Stat. 334], expressly declaring, "Nor shall a writ of injunction be granted to stay proceedings in any court of a state." There is nothing in the bankrupt law in terms repealing this statute, and the authority conferred by section 40 to issue an injunction against the bankrupt and all other persons, excludes the presumption that it is to be exercised without limitation. Other "persons" here expressed, has reference to parties interfering with the property of an individual not yet adjudicated an involuntary bankrupt, and which is to be preserved inviolate, until his bankruptcy has been legally ascertained. It does not refer to the courts of a state, or to their executive officers. It was not designed to arrest the whole machinery of another and independent forum, which is exercising its best efforts to marshal the assets of the debtor, and after discharging the legitimate liens to which they are subject, reserving the residue as a fund for the assignee in bankruptcy.

Liens by this law, as they should be, are held sacred. To say that the vigilant creditor, who by his diligence has secured his debt, and has a valid lien upon the property of the bankrupt, shall come in with all the other creditors pro rata, would be a perversion of the purposes of congress in the passage of the act. No right acquired by the creditor is affected or impaired. Section 14 expressly protects him. The assignee has authority, under the direction of this court, to discharge any lien upon any property, real or personal, and is authorized to sell the same subject to such lien or other incumbrances. By section 15 he is permitted to sell all unincumbered estates, real and personal, on such terms as he thinks most for the interest of the creditors. Where there is a lien on real or personal property, section 20 admits the holder of the lien as a creditor in bankruptcy for the balance of the debt, after deducting the value of the property, to be ascertained by agreement or sale, or the creditor may release or convey his claim to the assignee, and be permitted to prove his whole debt in bankruptcy.

These several sections are distinct recognitions by congress of the sanctity of liens, obtained before the inception of proceedings in bankruptcy, and they control, and are a limitation of the sweeping provisions of the first section. It is among the elementary principles with regard to the construction of statutes, that every section, provision, and clause of a statute shall be expounded by a reference to every other. The most general and absolute term of one section may be qualified and limited by conditions and exceptions contained in another, so that all may stand together.

All liens then remain intact. The bankrupt's final certificate operates to discharge his person and future acquisitions, while, at the same time, the mortgagee or other lien creditor shall be permitted to have his satisfaction out of the property mortgaged or subject to lien. A legal right without a remedy would be an anomaly in the law. [Peck v. Jenness] 7 How. [48 U. S.] 623.

It is true that section 1 of the act declares that the jurisdiction conferred on the district court of the United States shall extend to "all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy." But as the supreme court of the United States say, in the case of Peck v. Jenness, before quoted in 7 How., the court of common pleas of Armstrong county has full and complete jurisdiction over the parties and the subject matter; and its jurisdiction had attached long before any act of bankruptcy was committed. It is an independent tribunal, not deriving its authority from the same sovereign; and is, as regards the district court, a foreign forum, in every way its equal. The district court has no supervisory power over it.

When the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation not merely in comity, but in necessity. For if one may enjoin, the other may retort by injunction, and thus the parties would be without remedy; being liable to a process for contempt in one if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin or other process, for this would produce a conflict of jurisdiction extremely embarrassing in the administration of justice. The fact, therefore, that an injunction issues only to the parties before the court, and not to the court itself, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum.

It follows, therefore, that this court has no supervisory power over the court of common pleas of Armstrong county by injunction or otherwise, unless it is conferred by the bankrupt law. But we cannot discover any provision in that act which limits the jurisdiction of the state courts, or confers any power on the bankrupt court to supersede their jurisdiction, or wrest property from the custody of their officers. On the contrary it provides, in section 14, that the assignee "may prosecute and defend all suits at law

or in equity, pending at the time of the adjudication of bankruptcy, in which such bankrupt is a party, in his own name, in the same manner, and with the like effect, as they might have been prosecuted or defended by such bankrupt." In other words, as to the estate and property of the bankrupt, the assignee is subrogated to all his rights and responsibilities. The act sends the assignee to the state court, and admits its power over him. It confers no authority on this court to restrain proceedings therein by injunction or other process, much less to take property out of its custody or possession with a strong hand.

Finding no such grant of power, either in direct terms or by necessary implication, from any of the provisions of the bankrupt law, we are not at liberty to interpolate it on any supposed grounds of policy or expediency. We shall, therefore, be compelled to dissolve this and all other injunctions in similar cases.

I have not submitted this opinion to my Brother Grier; but it may be a source of gratification to the profession to learn that, sitting with him recently, at circuit in Philadelphia, we conferred upon this case, and I am pleased to say that he concurred in the legal principles upon which it should be decided.[3]

Injunction dissolved.

[3] In Burns' Case, argued and decided at the same time with Campbell's Case, reported in the text, the same doctrine was re-asserted. See 7 Am. Law Reg. (N. S.) 105 [Burns, In re, Case No. 2,182].

